[Cite as *Tedeschi v. Atrium Ctrs., L.L.C.*, 2012-Ohio-2929.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 97647

---

## PAMELA TEDESCHI, EXECUTOR OF THE ESTATE OF RUTH A. CROWE, DECEASED

### PLAINTIFF-APPELLEE

vs.

## ATRIUM CENTERS, L.L.C., ET AL.

### DEFENDANTS

## [APPEAL BY ESSEX OF SALEM I, L.L.C., DEFENDANT-APPELLANT]

---

### JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-674442

**BEFORE:** Celebrezze, P.J., Rocco, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 28, 2012

**ATTORNEYS FOR APPELLANT**

Brant E. Poling
Colleen H. Petrello
Poling/Petrello
1100 Superior Avenue
Cleveland, Ohio   44114

Douglas P. Holthus
Paul-Michael LaFayette
Poling/Petrello
300 East Broad Street
Suite 350
Columbus, Ohio   43215


**ATTORNEYS FOR APPELLEE**

Michael D. Schroge
Frank Gallucci, III
Plevin & Gallucci Co.
55 Public Square
Suite 2222
Cleveland, Ohio   44113

Paul W. Flowers
Paul W. Flowers Co., L.P.A.
Terminal Tower
35th Floor
50 Public Square
Cleveland, Ohio   44113

FRANK D. CELEBREZZE, JR., P.J.:

{¶1} Appellant, Essex of Salem I, L.L.C. ("Essex"), brings this appeal challenging the denial of its second motion to stay a wrongful death and medical malpractice suit pending arbitration brought by Pamela Tedeschi, executor of the estate of Ruth Crowe. Essex argues the cause should be stayed pursuant to a valid and enforceable arbitration agreement signed by Tedeschi. After a thorough review of the record and pertinent law, we affirm the trial court's decision.

## I.   Facts and Procedural History

{¶2} Ruth Crowe was a recently admitted resident to a nursing home operated by Essex, which was in turn controlled by Atrium Centers, L.L.C. ("Atrium"). On June 13, 2007, Crowe was left alone seated in a wheelchair in a courtyard of the facility. She had a documented history of falls, which was disclosed to Essex in medical records received by it during her admission. Tragically, Crowe's wheelchair tipped back, and she hit her head and died two days later from injuries sustained in the fall.

{¶3} Crowe was admitted on March 10, 2007. During the admission process, on March 12, 2007, Crowe's daughter Pamela Tedeschi ("Tedeschi") signed several forms on behalf of Crowe, purportedly through a health care power of attorney that was executed March 6, 2007. One of those forms was a binding arbitration agreement.

{¶4} Tedeschi, as the executor of Crowe's estate, filed a wrongful death action against Essex and Atrium alleging that negligent care had caused Crowe's death. Essex and Atrium moved to stay the case pending arbitration, citing the March 12, 2007

arbitration agreement. In order to properly respond to the motion, Tedeschi wished to depose Freda Scott, the administrator overseeing Crowe's admission and the person who signed the arbitration agreement on behalf of Essex. However, Essex failed to provide deposition dates after extensive inquiry by Tedeschi's attorney. Tedeschi requested additional time to respond, but a deposition had still not been scheduled when the additional time granted in her second motion for additional time to respond had run out. As a result, on May 1, 2009, the trial court granted the motion to stay without the benefit of a brief in opposition.

{¶5} On September 30, 2009, Tedeschi filed a motion to lift the stay and to compel the deposition of Scott. The trial court entertained the motion and found that Atrium was not a party to the agreement and vacated the order as to it. Scott was ultimately deposed and from her deposition, Tedeschi learned that Scott never determined whether any physician had declared Crowe, a 69-year-old woman, unable to make health care decisions for herself. According to Tedeschi's affidavit, no doctor she knew of had done so. This meant the health care power of attorney was not effective at the time Tedeschi signed the arbitration agreement. The trial court agreed and found the arbitration agreement ineffective and lifted the stay completely on September 8, 2010.

{¶6} The case proceeded with Atrium and Essex filing motions for summary judgment. The trial court granted Atrium's motion finding a lack of evidence as to it, but denied Essex's motion. Essex then filed a "Motion to Dismiss; Alternatively, Motion to Stay and Compel Arbitration" on October 17, 2011. There it argued that Atrium was no

longer a party and that the trial court had already granted Essex's motion to stay pending arbitration and found the arbitration agreement valid. The trial court denied the motion without opinion on November 4, 2011. Essex then filed this interlocutory appeal assigning one error for review:

"I. The trial court erred in denying [its] motion to dismiss, alternatively, motion to stay and compel arbitration."

## II. Law and Analysis

### A. Jurisdiction

{¶7} Before we reach the merits of this appeal, Tedeschi points out that Essex did not appeal from the judgment vacating the order to stay the case pending arbitration. Instead, it filed trial briefs, jury instructions, and a motion for summary judgment. Only after its motion for summary judgment was denied did Essex again raise this issue by filing a second motion to stay pending arbitration. Tedeschi argues that issue was appealable when the court vacated its earlier order based on her argument that the arbitration agreement was unenforceable because she did not have authority to sign as Crowe's representative.

{¶8} Essex casts blame on Tedeschi for not appealing the original order staying the case pending arbitration. However, according to Tedeschi, she could not properly appeal the order because Essex had not cooperated in scheduling the deposition of Scott, the nursing home employee present during the signing of the agreement and overseeing Crowe's admittance. Therefore, the only alternative was to seek out her deposition in

order to develop a record and to seek reconsideration of the trial court's decision to grant the nursing home's motion to stay pending arbitration. In taking Scott's deposition, it was disclosed that no physician at the nursing home had declared Crowe incompetent to make legal decisions. In fact, Scott's notes indicate that Crowe was alert and doing well. Tedeschi claims that Essex should have appealed this issue after a proper record had been made and the trial court lifted the stay.

{¶9} The order granting Tedeschi's motion to lift the stay was a nullity, and Essex could not appeal from that order. A motion granting a stay pending arbitration is a final order. *Kelm v. Kelm,* 73 Ohio App.3d 395, 597 N.E.2d 535 (10th Dist.1992). A trial court does not have authority to reconsider such orders absent some jurisdictional basis.

> Succinctly stated, the Rules of Civil Procedure specifically limit relief from judgments to motions expressly provided for within the same Rules. A motion for reconsideration is conspicuously absent within the Rules. Rather the Civil Rules do allow for relief from final judgments by means of Civ.R. 50(B) (motion notwithstanding the verdict), Civ.R. 59 (motion for a new trial), and Civ.R. 60(B) (motion for relief from judgment).

*Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 380, 423 N.E.2d 1105 (1981). Any order purporting to reconsider a final judgment absent one of these prescribed avenues is a nullity. *Id.*

{¶10} Tedeschi's motion to lift the stay is akin to a motion for reconsideration and was inappropriately granted by the trial court. She characterizes this order as final and appealable, but in reality it is a nullity — void. *Id.* "'The Civil Rules do not provide for a motion for reconsideration of a final appealable order, * * * [and] this court has no jurisdiction to review the motion for reconsideration.'" *Manley v. Heather Hill, Inc.*, 175

Ohio App.3d 155, 2007-Ohio-6944, 885 N.E.2d 971, ¶ 29 (11th Dist.), quoting *Smith v. Manor Care of Canton, Inc.*, 5th Dist. Nos. 2005-CA-00100, 2005-CA-00160, 2005-CA-00162, and 2005-CA-00174, 2006-Ohio-1182, ¶ 40-41.

{¶11} This case is procedurally similar to one from the Second District involving a trial court's reconsideration of a motion to stay pending arbitration. *Green Tree Servicing, L.L.C. v. Kramer*, 193 Ohio App.3d 140, 2011-Ohio-1408, 951 N.E.2d 146 (2d Dist.). There, the appellate court found that the trial court did have jurisdiction to rule on what would be equivalent to Essex's motion to dismiss or stay pending arbitration. The *Green Tree Servicing* court ruled,

> [t]he trial court's order of February 9, 2010 [denying a stay pending arbitration], was a final order, and the April 15, 2010 order purporting to reconsider that order is a nullity. The trial court did have the ability, however, to rule on Kramer's April 30, 2010 motion for reconsideration. In the motion, Kramer pointed out that the court's February 9, 2010 order was a final judgment on the issue and that Green Tree should have appealed the order but did not. We interpret Kramer's motion as having asked the court to vacate its void judgment; i.e., give judicial recognition to the fact that its order of April 15, 2010, is a nullity. *Id.* at ¶ 30.

{¶12} Here we do not have exactly the same arguments raised below as those raised in *Green Tree Servicing*. In its motions and briefs in opposition to Tedeschi's motions, Essex seems to ignore the trial court's reconsideration of its decision to stay the case pending arbitration. In fact, in its second motion to stay pending arbitration, Essex does not mention the court's reconsideration, but argues the order staying the case pending arbitration "must stay in effect * * *"; it does not give any reason the order "must stay in effect." It does not mention the trial court's inability to reconsider a final

judgment absent a jurisdictional basis. However, its stubborn refusal to acknowledge the order reconsidering the motion to stay could be because it perceived the order as void.

{¶13} We cannot construe Essex's motion to point out the error made by the trial court because nothing in it argues the finality of the order granting a stay. Essex's motion simply acts as if the order vacating the stay never existed. In fact, it actually relied on a January 11, 2010 journal entry partially granting Tedeschi's request to lift the stay pending arbitration finding Atrium was not a party to the arbitration agreement, but that Tedeschi "ENTERED INTO A VALID ARBITRATION AGREEMENT AS TO DEFENDANT ESSEX OF SALEM I * * *."

{¶14} Given this odd procedural quagmire, this court is left to scrounge around for some jurisdictional basis upon which to entertain the present appeal. Therefore, we must treat this appeal as one timely filed from the denial of a motion to stay pending arbitration based on Essex's second motion and find that we have jurisdiction under R.C. 2711.02(C) to hear the present appeal.

## B. Stay Pending Arbitration

{¶15} While we disagree with Tedeschi regarding this court's ability to hear this appeal, we do not disagree with her analysis of the validity of the arbitration agreement. While the state of Ohio favors arbitration as an expedient and cost-effective means of resolving disputes, a party who has not agreed to arbitrate a dispute cannot be forced to do so and give up her right to court adjudication of disputes. *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 1998-Ohio-172, 687 N.E.2d 1352. In

many cases, a decision ruling on a motion to stay pending arbitration will be reviewed de novo. *McCaskey v. Sanford-Brown College*, 8th Dist. No. 97261, 2012-Ohio-1543, ¶ 7. A de novo standard applies to questions of whether a party has agreed to submit an issue to arbitration. *Shumaker v. Saks Inc.*, 163 Ohio App.3d 173, 2005-Ohio-4391, 837 N.E.2d 393, ¶ 6 (8th Dist.), citing *Vanyo v. Clear Channel Worldwide*, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482 (8th Dist.).

**{¶16}** Here, the trial court must have determined that the health care power of attorney was not effective at the time Tedeschi signed the arbitration agreement — a question of law that requires de novo review. No deference is afforded to the trial court's determination, and this court undertakes an independent examination of that question. *Gilchrist v. Gonsor*, 8th Dist. No. 88609, 2007-Ohio-3903.

**{¶17}** To that end, Tedeschi argues that the health care power of attorney was not effective at the time she signed the arbitration agreement on behalf of her mother, Ruth Crowe. "A power of attorney is a written instrument authorizing an agent to perform specific acts on behalf of his principal." *Testa v. Roberts*, 44 Ohio App.3d 161, 164, 542 N.E.2d 654 (6th Dist.1988). A power of attorney may be drafted such that it only comes into being upon certain conditions. R.C. 1337.29(A). Ohio's former statutory health care power of attorney, which Crowe's is based upon, is an example. R.C. 1337.11 et seq. Under this framework, a representative may make health care decisions for a principal only when the principal has lost the ability to make those decisions. Former

R.C. 1337.13.[1]  Crowe's power of attorney sets forth the terms upon which it becomes effective.  Without the fulfillment of the conditions required for the power to come into being, the representative has no authority to bind the principal.  *State v. Keith*, 8th Dist. No. 72275, 1998 WL 742172, *7 (Oct. 22, 1998).

{¶18} Tedeschi presented evidence that the power was not effective based on the deposition of Scott and her affidavit.  Essex did nothing to establish that Crowe could not make health care decisions or otherwise ensure the health care power of attorney was valid when Tedeschi signed the arbitration agreement.  Tedeschi averred that she was aware of no physician that had declared Crowe incompetent.  Essex simply argued that Tedeschi signed the agreement, and she should be bound.  But she did not sign the agreement in an individual capacity. She signed the agreement as Crowe's representative under a health care power of attorney that had specific provisions regarding when that power existed. According to the record before this court, that power had not yet come into being because no one had declared Crowe mentally unfit to make her own health care decisions.  This may open Tedeschi up to suit in signing the arbitration agreement where she specifically acknowledged that she had the authority to do so on behalf of Crowe, but it does not bind Tedeschi or Crowe's other surviving relatives to abide by the terms of the agreement.[2]  The agreement reads as if it is between Crowe and Essex, not Tedeschi and

---

[1]  Ohio has since adopted the Uniform Power of Attorney Act.  *See* R.C. 1337.21 to 1337.64.

[2]  Essex does not argue that Tedeschi should be equitably estopped from avoiding the arbitration agreement, only that the agreement was not unconscionable, or that the trial court had already found the agreement enforceable.

Essex. Therefore, the trial court did not err in denying Essex's motion to stay the case pending arbitration.[3]

### III. Conclusion

**{¶19}** While the route to reach the merits of the trial court's decision to deny Essex's motion to stay pending arbitration was tortured, it was ultimately correct given evidence in the record that Tedeschi lacked authority to sign the arbitration agreement on behalf of Crowe. And, although the proceedings below are littered with errors precipitated by both parties, the trial court's decision is upheld, and Essex's sole assignment of error is overruled.

**{¶20}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

---

[3] The trial court also did not err in refusing to dismiss the case because the proper action to take when faced with a desire to arbitrate by one of the parties is to stay the case, not dismiss it. *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 517 N.E.2d 559 (8th Dist.1986).

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

KENNETH A. ROCCO, J., and
EILEEN A. GALLAGHER, J., CONCUR